UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

POLICE AND FIRE RETIREMENT
SYSTEM OF THE CITY OF DETROIT,
Individually and On Behalf of All Others
Similarly Situated,

    Plaintiff,

v.                                                                          Case No.: 8:19-cv-69-TPB-AAS

AXOGEN, INC., *et al.*,

    Defendants.
_____/

## ORDER GRANTING "DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT" WITH PREJUDICE

This matter is before the Court on "Defendants' Motion to Dismiss the Second Amended Class Action Complaint," filed on August 6, 2020. (Doc. 112). Plaintiff filed a response in opposition on September 20, 2020. (Doc. 115). This Court held a hearing on the motion on February 25, 2021. Upon review of the motion, response, argument of counsel, court file and record, the Court finds as follows:

## Background

The Court's prior Order dismissing the first amended complaint sets forth the procedural and factual background of this case in detail and is incorporated by reference. *See* (Doc. 104 at 2-11). Axogen develops and markets surgical products used to treat peripheral nerve injuries ("PNI"). Beginning in November 2017, Axogen sought to raise capital from investors by conducting a secondary public offering of its common stock. In Axogen's offering materials and in other

statements to investors, Axogen provided estimates of the size of the market for its products, which it stated were based on information in a United States Department of Health and Human Services ("HHS") report, an article by Kurt Brattain, M.D., and an article by James Noble.

On December 18, 2018, Seligman Investments, a "short seller," which stood to gain by a drop in the price of Axogen stock, released a report criticizing Axogen's statements and concluding that the market for Axogen's products was a fraction of what Axogen estimated. Following release of the Seligman report, Axogen's stock price declined more than 38 percent over a short period of trading.

Plaintiff, a retirement system with over $3 billion in assets under management, brought this putative class action on behalf of itself and other purchasers against Axogen, certain of its officers, and other Defendants, alleging that Defendants' statements violated the Securities Act of 1933 and the Securities Exchange Act of 1934. Plaintiff pointed to the Seligman analysis, an analysis by an expert consulting firm, and statements of a confidential witness, identified as "CW1," as demonstrating that Defendants' representations relating to the size of the market were false. In its claims under the 1934 Act, Plaintiff alleged that Defendants acted with actual knowledge of the representations' falsity or recklessly.

On April 21, 2020, this Court entered a detailed order dismissing the first amended complaint, primarily on the ground that the challenged statements were "forward-looking statements" under the 1995 Private Securities Litigation Reform Act ("PSLRA"). (Doc. 104). Because the statements were accompanied by sufficient

cautionary language and the complaint lacked allegations that Defendants knew the statements were false, they were protected by the safe harbor provided by the PSLRA.  The Court also ruled that the allegations were insufficient to support a strong inference of the scienter required for claims under the 1934 Act.[1]  The Court allowed Plaintiff to amend, and Plaintiff filed its second amended complaint on June 22, 2020.  (Doc. 105).  Defendants once again have moved to dismiss.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face."  *Id.* at 570.  When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint.  *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995).  Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff."  *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "[A] motion to dismiss should concern

---

[1] The Court also concluded that Plaintiff failed to allege that certain statements were false and that other matters Plaintiff challenges were not material.  *See* (Doc. 104 at 21-22, 30-35).

only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

In cases involving fraud, including securities fraud, Rule 9(b) requires that the complaint state with particularity the circumstances constituting the fraud, setting forth the challenged statements and the documents or oral representations where they were made, their time and place, and the person responsible for them, the content of the statements, how they misled the plaintiff, and what the defendant received as a result of the fraud. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). Rule 9(b) also provides that the complaint may allege intent, knowledge, and other conditions of the defendant's mind generally.

Under the PSLRA, an alleged misrepresentation that constitutes a forward-looking statement is protected by a "safe harbor," as long as (1) the statement is identified as such and accompanied by "meaningful cautionary statements," or (2) the statement is immaterial, or (3), the plaintiff fails to prove that the statement was made with actual knowledge that it was false or misleading. 15 U.S.C. § 78u-5(c)(1). The PSLRA also imposes a heightened standard for pleading scienter in securities fraud cases, requiring particularized allegations of fact sufficient to support a "strong inference" that the defendant acted with the requisite state of mind. 15 U.S.C. § 78u-4(b)(2)(A).

## Analysis

The Court's prior Order discussed the application of these standards to each representation challenged by Plaintiff and concluded that dismissal was required. The same holds true for the second amended complaint. The prior Order, for example, concluded that the challenged statements were forward-looking and fell within the PSLRA safe harbor. *See* (Doc. 104 at 16-36). The second amended complaint does not allege any new or different representations by Defendants. Nor does Plaintiff point to any new controlling authority with respect to the PSLRA issues the Court found dispositive.

Instead, Plaintiff reargues its position that the statements at issue were not forward-looking, focusing in particular on statements made in Axogen's offering materials and elsewhere that a certain number of people in the United States "each year . . . *suffer* " traumatic PNI, which "*result in* over 700,000 extremity nerve repair procedures," and that "[t]here *are* more than 900,000 nerve repair surgeries annually in the U.S." *See, e.g.*, (Doc. 105 at ¶¶ 65, 202). Plaintiff argues these statements refer to "present existing conditions." But the number of injuries occurring "each year" reflects an ongoing state of affairs extending from the present into the future, rather than an observable state of affairs in existence at the specific point in time when the statement is made. Such a statement cannot be determined to be true or false by reference to "present existing conditions," and is therefore analogous to other present tense statements the Eleventh Circuit has held to be forward-looking. *See Ehlert v. Singer*, 245 F.3d 1313, 1318 n.5 (11th Cir. 2001)

("[t]he Company *is devoting* significant resources to the development of enhancements to its existing products . . ..") (emphasis added); *Harris v. Ivax Corp.*, 182 F.3d 799, 805-06 (11th Cir. 1999) ("[T]he challenges unique to this period in our history *are now* behind us . . . [O]ur fundamental business and its underlying strategies *remain intact* . . . IVAX *is certainly very well positioned*.") (emphasis added). *See also* (Doc. 104 at 17-19, 28-29).

At the hearing, Plaintiff also focused on Defendants' statement that its market estimate "*is* based upon" epidemiological studies, physician interviews, and the incidence of PNI, specifically, the HHS report and the Noble and Brattain articles. *See* (Doc. 105 at ¶¶ 63-67, 78). As the Court previously noted, however, Plaintiff does not allege that Defendants did not in fact use information in the cited materials to create their estimates. *See* (Doc. 104 at 21-22). Plaintiff alleges they did not do so reasonably, or "solidly," but Defendants did not make assertions regarding *how* they used the information. *See, e.g.*, (Doc. 105 at ¶¶ 63, 66, 70, 74, 267).

The Court also previously concluded that Plaintiff had failed to allege facts supporting the "strong inference" of scienter required by the PSLRA. (Doc. 104 at 36-46). Plaintiff's second amended complaint includes additional allegations potentially relating to Defendants' scienter. The complaint, for example, sets forth opinions by four additional former Axogen employees identified as confidential witnesses that Axogen's market estimates were inflated. But there is no allegation of fact suggesting that these opinions or other information casting doubt on

Defendants' estimates were communicated to the individuals responsible for issuing the challenged statements prior to their release.  The complaint alleges that sales data was available to Axogen's top management, but the challenged estimates were based on estimate future potential sales, not current sales.  The complaint alleges that Axogen CEO Karen Zaderej had not sold any of her Axogen stock until late 2018 shortly before the Seligman report came out, but does not allege she had knowledge of that report prior to its release or what proportion of her stock these sales represented.  Under the principles and authorities discussed in the prior Order, the Court concludes that the second amended complaint's allegations fail to support the "strong inference" of scienter required to avoid dismissal.

As a separate basis for dismissal Defendants argue that the second amended complaint must be dismissed pursuant to *Omnicare, Inc. v Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015).  Relying on *Omnicare*, the Eleventh Circuit has held that opinions are actionable as false statements of fact only in two circumstances:

> [A] statement of opinion that "falsely describe[s][ the speaker's] own state of mind" is an untrue statement of fact – as to what the speaker actually believes – and accordingly will "subject the issuer to liability (assuming the misrepresentation were material)"

or

> When statements of opinion "contain embedded statements of fact," a speaker may be liable "if the supporting fact she supplied were untrue."

*Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1322 (11th Cir. 2019) (quoting *Omnicare*, 575 U.S. at 184-85).  Here, the statements identified in the second

amended complaint are opinions. *See, e.g.,* (Doc. 105 at ¶¶ 49-50, 62-67). But the opinions identified are not actionable as false statements of fact under either of the two options identified in *Carvelli*.

For a statement of opinion to be actionable due to a material omission, *Omnicare* requires a plaintiff to allege specific facts about the speaker's knowledge or the nature of the speaker's inquiry the omission of which renders the statement misleading, based on what a reasonable investor would infer about the speaker's knowledge or inquiry. *Omnicare*, 575 U.S. at 188-89, 194. Whether statements are misleading by omission is determined under an objective standard that takes into account the context in which the statements appear, including accompanying cautionary statements, as well as any customs and practices in the industry. *Id.* at 187, 190.

The allegations in the second amended complaint fail to meet the *Omnicare* standard. There is no allegation that Defendants, at the time they issued the challenged estimates, possessed the data or analyses that Plaintiff now argues show Defendants' estimates were incorrect. Nor does Plaintiff allege omitted facts regarding the nature of the inquiry conducted by Defendants in creating the estimates that would render the statements misleading to reasonable investors. Plaintiff does not allege, for example, that Defendants made only an "off-the-cuff" guess as to the estimated size of the market, *see id.* at 190, rather than an analysis based on data, however flawed, nor is there any allegation regarding what reasonable investors would expect regarding the particular sources consulted or the

methodology used by a company to create estimates of this type. As such, the second amended complaint is also due to be dismissed pursuant to *Omnicare* and *Carvelli*.

Plaintiff confirmed at the February 25, 2021, hearing that it did not seek leave to further amend the complaint and that, in the event of dismissal, it would stand on the complaint as pled for purposes of appeal.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendants' Motion to Dismiss the Second Amended Class Action Complaint" (Doc. 112) is hereby **GRANTED.**
2. The second amended complaint (Doc. 105) is hereby **DISMISSED WITH PREJUDICE**.
3. The Clerk is directed to terminate any pending motions and deadlines and thereafter close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 19th day of March, 2021.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**